UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 8/22/2016

---

RASHID SALEEM,

           Petitioner,

      v.

CHRISTOPHER SHANAHAN, in his official
capacity as New York Field Office Director
for U.S. Immigration and Customs
Enforcement; DIANE MCCONNELL, in her
official capacity as Assistant Field Office
Director of U.S. Immigration and Customs
Enforcement; JEH JOHNSON, in his official
capacity as Secretary of the U.S. Department
of Homeland Security; LORETTA LYNCH,
in her official capacity as Attorney General of
the United States; and the U.S.
DEPARTMENT OF HOMELAND
SECURITY,

           Respondents.

No. 16-CV-808 (RA)

OPINION & ORDER

---

RONNIE ABRAMS, United States District Judge:

      Petitioner Rashid Saleem brings this petition for a writ of habeas corpus seeking a bail

hearing to review his ongoing detention by the Department of Homeland Security ("DHS").

Saleem, who has been detained by DHS for seventeen months as a non-resident "arriving alien,"

argues that, in refusing to provide such a hearing, Respondents have violated the Due Process

Clause of the Fifth Amendment. Whether non-resident arriving aliens like Saleem are entitled to

bail hearings has not been addressed in this circuit following the Second Circuit's decision in *Lora*

*v. Shanahan*, 804 F.3d 601 (2d Cir. 2015), *cert. denied*, 136 S.Ct. 2494 (U.S. 2016), and this

Court's decision in *Arias v. Aviles*, No. 15-CV-9249 (RA), 2016 WL 3906738 (S.D.N.Y. July 14, 2016). For the reasons that follow, the Petition is granted.[1]

**BACKGROUND**

**I.     Factual and Procedural Background**

Saleem, a native and citizen of Pakistan, immigrated to the United States in 1997 when he was approximately 20 years old. Pet. ¶¶ 2, 17. Although he has filed multiple applications for permanent residency in the United States, he has yet to be granted legal permanent resident ("LPR") status. *See id.* ¶¶ 23, 26.

On September 1, 2013, Petitioner was arrested for driving while intoxicated ("DWI") in Nassau County, New York. *Id.* ¶ 20; *id*, Ex. A at 11. Soon after his arrest, Saleem sought permission from DHS to leave the country to visit his sick father in Pakistan. *Id.* ¶ 21. He left approximately one week after his arrest and returned about ten months later on July 14, 2014. *Id.* ¶¶ 21–22. When Saleem presented himself for readmission into the United States, DHS informed him "that there was a warrant for his arrest due to his pending DWI proceeding." *Id.* ¶ 22. He was then "picked up by Nassau County Police officers," who brought him to New York State Supreme Court to address the warrant. *Id.* He later pled guilty to the outstanding DWI charge and was sentenced to probation, a fine, and a one-year suspension of his driver's license. *Id.* On March 11, 2015, eight months after his reentry, Saleem was detained by DHS as an "arriving alien." *Id.* ¶ 24.[2] DHS thereafter initiated removal proceedings and Saleem has been detained since that date. *See* Letter from Andrea Saenz to Hon. Ronnie Abrams, Dkt. 16, at 1 (Apr. 12, 2016).

---

[1] Counsel for Petitioner acted *pro bono* in this matter. The Court is grateful for *pro bono* counsel's superb advocacy.
[2] Although Salim was paroled into the United States for the purpose of prosecution, he is still treated, for constitutional purposes, as if stopped at the border due to the "'entry fiction,' which provides that although aliens seeking admission into the United States may physically be allowed within its borders pending a determination of admissibility, such aliens are legally considered to be detained at the border and hence as never having effected entry

2

On February 3, 2016, Saleem filed the instant petition for a writ of habeas corpus (the "Petition") seeking a bail hearing.

## JURISDICTION

This Court has subject matter jurisdiction over the Petition under 28 U.S.C. § 2241(c)(3). *See, e.g.*, *Louisaire v. Muller*, 758 F. Supp. 2d 229, 234 (S.D.N.Y. 2010) (collecting cases in which courts "exercised jurisdiction to decide similar questions of statutory interpretation under the . . . mandatory detention statute"). While the laws governing immigration detention prohibit judicial review of the government's "discretionary judgment regarding the application of this section," 8 U.S.C. § 1226(e), the "issue presented by [this P]etition is the construction of the mandatory detention statute, not a discretionary decision whether or not to grant release on a bond." *Straker v. Jones*, 986 F. Supp. 2d 345, 350 (S.D.N.Y. 2013). The Court thus has jurisdiction to consider the statute in light of constitutional concerns. *See Demore v. Kim*, 538 U.S. 510, 517 (2003) ("Section 1226(e) contains no explicit provision barring habeas review, and we think that its clear text does not bar respondent's constitutional challenge to the legislation authorizing his detention without bail.").

## DISCUSSION

Both parties agree that Saleem was properly classified as an "arriving alien" under the immigration laws. Pet. ¶ 30; Opp. at 3. "The term arriving alien means an applicant for admission coming or attempting to come into the United States at a port-of-entry . . . ." 8 C.F.R. § 1001.1(q). Arriving aliens like Saleem are subject to mandatory detention by DHS pursuant to 8 U.S.C. § 1225(b), which states:

> [I]n the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking

into this country." *Napoles v. I.N.S.*, 278 F. Supp. 2d 272, 275 (D. Conn. 2003) (quoting *Barrera–Echavarria v. Rison*, 44 F.3d 1441, 1450 (9th Cir. 1995)).

> admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a [removal] proceeding.

8 U.S.C. § 1225(b)(2)(A). Nothing in the statute or the associated regulations limits the length of § 1225(b) detention. *Id.*

Saleem argues that the Second Circuit's recent decision in *Lora v. Shanahan* compels this Court to construe § 1225(b) to include an implicit temporal limitation of six months, after which arriving aliens are entitled to bail hearings. The Court recently addressed a related issue in *Arias v. Aviles. See* 2016 WL 3906738, at *10.

## I.     The *Lora* Decision

On October 28, 2015, the Second Circuit granted the habeas corpus petition of Alexander Lora, an LPR and citizen of the Dominican Republic, whom DHS detained pursuant to 8 U.S.C. § 1226(c) following his release from a prison term for drug offenses. *See Lora*, 804 F.3d at 606–08. Section 1226(c) mandates that DHS detain aliens living within the United States who are convicted of certain crimes, including the drug crimes Lora committed. *Id.* The *Lora* court held that Supreme Court precedent "clearly establish[ed] that mandatory detention under section 1226(c) is permissible, but . . . there must be some procedural safeguard in place for immigrants detained for months without a hearing." *Id.* at 614. The circuit thus "conclude[ed] that in order to avoid serious constitutional concerns, section 1226(c) must be read as including an implicit temporal limitation" or, in other words, "some 'reasonable' limit on the amount of time that an individual can be detained without a bail hearing." *Id.* Having determined that due process mandates a reasonable limit on the length of detention under § 1226(c), the Second Circuit went on to assess "how to determine reasonableness." *Id.* The court elected to follow the Ninth Circuit and "apply a bright-line rule to cases of mandatory detention where the government's 'statutory mandatory detention authority under Section 1226(c) . . . [is] limited to a six-month period, subject

4

to a finding of flight risk or dangerousness.'" *Id.* (quoting *Rodriguez v. Robbins*, 715 F.3d 1127, 1133 (9th Cir. 2013) (hereinafter "*Rodriguez II*")) (alterations in original).

## II.    The *Arias* Decision

On July 15, 2016, this Court issued an opinion in *Arias v. Aviles* granting a writ of habeas corpus to Juan Gutierrez Arias, an LPR detained as an arriving alien pursuant to § 1225(b) upon his return to the United States with narcotics. 2016 WL 3906738, at *10; *see also* 8 U.S.C. § 1101(a)(13)(C)(iii) (mandating detention of LPRs returning from abroad who are suspected of conducting illegal activity outside the United States). The Court extended the Second Circuit's *Lora* decision to Gutierrez Arais because it found that he—as an LPR who left the country for only a brief period—possessed the same due process rights as the litigant in *Lora*. *Arias*, 2016 WL 3906738, at *8. Just as *Lora* had for § 1226(c), in *Arias*, this Court held that "[t]o avoid serious constitutional concerns, § 1225(b) must be read to include a reasonable limit on the length of detention." *Id.* at *8. Consistent with *Lora*, the Court thus determined "the appropriate remedy [to be] an individualized hearing before an immigration judge at which the Petitioner will 'be admitted to bail unless the government establishes by clear and convincing evidence that the immigrant poses a risk of flight or a risk of danger to the community.'" *Id.* *10 (quoting *Lora*, 804 F.3d at 616). The Court took no position on the constitutional protections that must be afforded to non-resident aliens like Saleem.

## III.   Section 1225(b) in Light of *Lora* and *Arias*

Saleem urges the Court to adopt the same reasoning it employed in *Arias* and not to find Saleem entitled to "fewer due process protections than individuals charged with criminal grounds of removability," such as Lora. Pet. ¶ 46. Respondents argue, as they did in *Arias*, that "the amount of process that Congress has given him" is the only "process [to which Saleem] is entitled." Or. Arg. at 14:5–9. As reflected in the parties' disagreement, the extent to which non-resident

arriving aliens are entitled to due process protection is an unsettled question. *See Nadarajah v. Gonzales*, 443 F.3d 1069, 1077 (9th Cir. 2006) (noting that the Supreme Court has declined to decide whether "the indefinite detention of inadmissible aliens presented the same constitutional problems in the same degree as the detention of admissible aliens"). This Court, however, need not determine the level of due process owed to Saleem because, in light of its decision in *Arias*, Supreme Court precedent requires that this Court construe § 1225(b) to include a six month temporal limitation on detention without a bail hearing.

In *Clark v. Martinez*, 543 U.S. 371 (2005), the Supreme Court considered whether to extend the holding of its earlier decision in *Zadvydas v. Davis*, 533 U.S. 678 (2001). In *Zadvydas*, the Court used the canon of constitutional avoidance to create a six month limitation on the detention of two aliens detained after they were ordered removed pursuant to 8 U.S.C. § 1231(a). 533 U.S. at 684, 701. The *Zadvydas* Court reasoned that the petitioners before it—aliens arrested while residing inside the United States—were unequivocally entitled to due process protection. *Id.* at 693 ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."). In *Clark*, by contrast, the petitioners were, like Saleem, non-resident aliens detained at the border prior to their admission to the United States. *See* 543 U.S. at 375. As such, their entitlement to due process rights was less clear. While the Court could have settled this open question of constitutional law, it declined to do so.

The Court instead relied on principles of statutory interpretation to grant the habeas petition. *Id.* at 380. Justice Scalia, writing for the majority, held that because the Court ruled in *Zadvydas* that the canon of constitutional avoidance required that § 1231(a) include a temporal limit for some aliens—namely, those detained after admission to the United States—the Court could not interpret the statute differently for those detained prior to admission, despite any

6

differences in constitutional protections to which these individuals were entitled. Because "the statutory text provide[d] for no distinction between admitted and nonadmitted aliens," the Court concluded that it must construe the statute consistently for "[t]he lowest common denominator, as it were," and impose a six month limit for any alien detained under the provision. *Id.* at 379–80. It explained its statutory analysis as follows:

> It is not at all unusual to give a statute's ambiguous language a limiting construction called for by one of the statute's applications, even though other of the statute's applications, standing alone, would not support the same limitation. . . . In other words, when deciding which of two plausible statutory constructions to adopt, a court must consider the necessary consequences of its choice. If one of them would raise a multitude of constitutional problems, the other should prevail—whether or not those constitutional problems pertain to the particular litigant before the Court.

*Id.* at 380–81.

The extent of Saleem's due process rights remains unclear in light of his non-resident alien status. Yet having construed § 1225(b) in order to avoid infringing upon the due process rights of certain LPRs in *Arias*, the Court must follow *Clark* and interpret the provision consistently for all aliens detained pursuant to it. When the *Clark* court was confronted with the "argu[ment] that the statutory purpose and the constitutional concerns that influenced [the Court's prior] statutory construction . . . are not present," Justice Scalia responded, "[b]e that as it may, it cannot justify giving the *same* detention provision a different meaning when [other] aliens are involved." *Id.* at 380 (emphasis in original). Similarly here, when Congress crafted § 1225(b), it permitted DHS to detain certain LPRs alongside inadmissible non-resident aliens, making "no distinction between" the two groups. *Id.* at 379. Now that this Court has construed § 1225(b) to avoid constitutional concerns for certain LPRs in *Arias*, for the reasons stated in *Clark*, it must apply that construction consistently to Saleem irrespective of "whether or not those constitutional problems pertain to the particular litigant before the Court." *Id.* at 381.

7

This interpretation of *Clark* and its applicability to § 1225(b) is supported by *Rodriguez v. Robbins*, the same Ninth Circuit case relied upon by the Second Circuit in *Lora*. *Lora*, 804 F.3d at 606 (citing *Rodriguez II*); *see also Rodriguez v. Robbins*, 804 F.3d 1060, 1083 (9th Cir. 2015) (hereinafter "*Rodriguez III*"), *cert. granted sub nom. Jennings v. Rodriguez*, 136 S. Ct. 2489 (U.S. 2016). In the *Rodriguez* class action, the Ninth Circuit construed § 1225(b) to contain a six month limitation based on the mere *possibility* that DHS could detain LPRs pursuant to it. *See Rodriguez II*, 715 F.3d at 1142; *Rodriguez III*, 804 F.3d at 1083. The court reasoned that "[b]ecause the government concedes that detention of lawful permanent residents under § 1225(b) is possible . . . 'the statute as a whole should be construed through the prism of constitutional avoidance.'" *Rodriguez III*, 804 F.3d at 1083 (quoting *Rodriguez II*, 715 F.3d at 1141).

Respondents argue that the Court should not follow the logic of *Rodriguez* because it "was a class action, and the Ninth Circuit undertook consideration of due process rights of each and every member of the certified § 1225(b) subclass." Opp. at 10. The Court disagrees. Faced with disagreement between the Government and petitioners about whether any LPRs existed in the class of aliens challenging § 1225(b), the Ninth Circuit concluded it could resolve the case without settling the discrepancy. *Rodriguez III*, 804 F.3d at 1083.[3] "The question," the court explained, "is whether 'one possible application of [the] statute raises constitutional concerns.'" *Id.* at 1083 (quoting *Rodriguez II*, 715 F.3d at 1141). Although it did not determine whether an LPR had joined the class, the *Rodriguez* court nonetheless construed § 1225(b) to contain a six month limitation for all aliens—LPRs and non-residents—because "the Supreme Court has instructed that, where one possible application of a statute raises constitutional concerns, the statute as a

---

[3] In particular, the Government argued in *Rodriguez* "that '[d]espite years of discovery, petitioners have not identified any member of the Section 1225(b) subclass who is a [lawful permanent resident],'" while "[p]etitioners represent[ed] that they have found lawful permanent residents . . . although their submissions [did] not identify any specific individuals who fit that description." *Rodriguez III*, 804 F.3d at 1083.

whole should be construed through the prism of constitutional avoidance." *Rodriguez II*, 715 F.3d at 1141 (citing *Clark*, 543 U.S. at 380). This Court need not rely on the mere possibility of an LPR's detention under § 1225(b) as the *Rodriguez* court did; the *Arias* case squarely presented that very situation and this very Court construed § 1225(b) "[t]o avoid serious constitutional concerns." *Arias*, 2016 WL 3906738, at *8. To interpret the statute one way for LPRs and another way for non-resident arriving aliens "would render [the] statute a chameleon, its meaning subject to change depending on the presence or absence of constitutional concerns in each individual case." *Clark*, 543 U.S. at 382. The Court agrees with Saleem that such an interpretation is untenable.

Finally, at oral argument Respondents raised an additional argument against extending the *Lora* and *Arias* decisions to Saleem's Petition. They expressed concern "that the government doesn't know anything about" many of the "hundreds of thousands of aliens every year seeking admission" to the United States. Oral Arg. 12:14–22. Thus, "to have a bond hearing when the government has to address issues like flight risk and dangerousness to the community is a very different proposition than somebody who has been living here for a long time." *Id.* at 12:22–13:1. In other words, Respondents confirmed, "the government may lose in [such] cases because it doesn't have information as to risk of flight or danger to the community." *Id.* at 13:3–6. But as Justice Scalia countered to the Government's concern in *Clark* that "the security of our borders will be compromised if it must release into the country inadmissible aliens who cannot be removed," "[i]f that is so, Congress can attend to it." 543 U.S. at 386. Any other result, as the *Clark* Court cautioned, "would establish within our jurisprudence, beyond the power of Congress to remedy, the dangerous principle that judges can give the same statutory text different meanings in different cases." *Id.*

9

## CONCLUSION

As it declines to interpret 8 U.S.C. § 1225(b)(2)(A) differently depending on which litigant is before it, the Court construes the provision to include a reasonable temporal limitation of sixth months on Saleem's detention. As the Second Circuit found in *Lora*, the appropriate remedy is an individualized bail hearing before an immigration judge at which the Petitioner "must be admitted to bail unless the government establishes by clear and convincing evidence that the immigrant poses a risk of flight or a risk of danger to the community." *Lora*, 804 F.3d at 616. Accordingly, the Petition is granted.

SO ORDERED.

Dated:  August 22, 2016
        New York, New York

Ronnie Abrams
United States District Judge

10